# UNITED STATES DISTRICT COURT
for the
District of Columbia

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. 22-sw-280
ONE RESIDENCE UNDER RULE 41 )
)
)

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A, herein incorporated by reference.

located in the ____Jurisdiction of the____ District of ____Columbia____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, herein incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Unlawful Distribution and Possession With Intent to Distribute Controlled Substances; |
| 18 U.S.C. § 922(g)(1) | Unlawful Possession of a Firearm and Ammunition; Using, Carrying and Possessing a |
| 18 U.S.C. § 924(c) | Firearm During and In Relation to a Drug Trafficking Offense |

The application is based on these facts:
See attached Affidavit in support of Search Warrant, which is incorporated herein by reference.

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Scott Schumacher, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
____telephone____ *(specify reliable electronic means)*.

Date: __09/01/2022__             _____
                                                *Judge's signature*

City and state: Washington, D.C.             Zia M. Faruqui, United States Magistrate Judge
                                                *Printed name and title*

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means        ☐ Original        ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>ONE RESIDENCE UNDER RULE 41 | )<br>)<br>)   Case No.  22-sw-280<br>)<br>)<br>) |

**WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the   Jurisdiction of the   District of   Columbia
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A, herein incorporated by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B, herein incorporated by reference.

**YOU ARE COMMANDED** to execute this warrant on or before   September 15, 2022   *(not to exceed 14 days)*
☒ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   Zia M. Faruqui   .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for ___ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   09/01/2022
                                                                                     *Judge's signature*

City and state:          Washington, D.C.                   Zia M. Faruqui, United States Magistrate Judge
                                                                                     *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: <br> 22-sw-280 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

    I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____          _____
*Executing officer's signature*

                                                                                 _____
*Printed name and title*

**Attachment A-1**

*Property to be searched*

The property to be searched is **1717 R Street NW, Apartment 313, Washington, D.C.** (the "TARGET LOCATION"). The front door of the TARGET LOCATION is wood grain with a brass knocker affixed to which are the number 313.

## ATTACHMENT B

*Property to be searched and seized from the
TARGET LOCATION*

1.  The items to be seized are fruits, evidence, information, contraband, or instrumentalities, in whatever form and however stored, relating to violations by LOGAN CARR of Title 21, United States Code, Sections 841(a)(1) (Unlawful Distribution and Possession With Intent to Distribute Controlled Substances), Title 18, United States Code, Section 922(g)(1) (Unlawful Possession of a Firearm and Ammunition), and Title 18, United States Code, Section 924(c) (Using, Carrying and Possessing a Firearm During and In Relation to a Drug Trafficking Offense) (hereinafter referred to as the "TARGET OFFENSES") described in the search warrant affidavit, including, but not limited to:

2.  Drugs and drug paraphernalia, and items used in the sale, transfer, transportation, packaging of illegal narcotics substances, and also including, but not limited to, scales, butcher paper, boots, plastic wrap, plastic bags, tape, cigarette papers, pipes, hypodermic needles and syringes, written articles on the use and effects of narcotics, diluents and cutting agents, which is evidence of the TARGET OFFENSES.

3.  Weapons, including but not limited to revolvers, semi-automatic pistols, rifles, ammunition, magazines, bulletproof vests, and firearms-related paraphernalia including, but not limited to, gun-cleaning kits, gun-sights, holsters, receipts and documentation for the purchase of same, and related firearm paraphernalia, which constitute tools for the commission of the TARGET OFFENSES.

4.  Documents related to or memorializing the ordering, purchasing, storage, transportation, and sale of controlled substances, including U.S. currency used in the purchase and

sale of controlled substances, buyer lists, seller lists, pay-owe sheets and records of sales, log books, drug ledgers, personal telephone/address books of customers and suppliers, rolodexes, telephone answering pads, bank and financial records, records relating to domestic and foreign travel such as tickets, passports, visas, credit card receipts, travel schedules, receipts and records, trucker log books and storage records, such as storage locker receipts and safety deposit box rental records, which is evidence of the TARGET OFFENSES, proceeds of the TARGET OFFENSES, and contain evidence of the TARGET OFFENSES.

5. Books, records, receipts, notes and other papers relating to the transportation, ordering, purchase, and distribution of controlled substances and the transportation, ordering, purchase and transfer of firearms and ammunition, which is evidence of the TARGET OFFENSES.

6. Clothing worn by LOGAN CARR and his associates during or in relation to the TARGET OFFENSES.

7. Address and/or telephone books and papers reflecting names, addresses and/or telephone numbers, which constitute evidence of customers, distributors, narcotics and/or weapons suppliers, conspirators, and potential witnesses of violations of the TARGET OFFENSES.

8. Books, records, receipts, bank statements, money drafts, letters of credit, money orders and cashier's checks, passbooks, bank checks, safe deposit box keys, and any other items evidencing the obtaining, secreting, transfer, concealment, storage and/or expenditure of money, which constitute records and proceeds of the TARGET OFFENSES.

9. United States currency, precious metals, jewelry and financial instruments, including but not limited to, stocks and bonds, documents and papers evidencing ownership, possession, storage, and location of such assets and facilities to safely store and secure such items, such as safes and lock or strong boxes.

10. Photographs, in particular photographs of co-conspirators, assets, firearms, and controlled substances, which constitute evidence of the TARGET OFFENSES.

11. Cellular telephones, computers, laptops, tablets, DVDs and other storage media, hard drives, and electronic storage devices, and receipts reflecting their ownership and use, which contain records of the commission of the TARGET OFFENSES, proceeds, or other evidence thereof.

12. Safes, both combination and key type, and their contents, which can contain evidence of the commission of the TARGET OFFENSES or proceeds from the commission of the TARGET OFFENSES.

13. Indicia of ownership, occupancy, or control of the target location and vehicle, including, receipts, invoices, bills, canceled envelopes and keys, which provides evidence of identity as to individuals committing the TARGET OFFENSES.

14. Financial records and articles of personal property evidencing or containing the evidence of the obtaining, secreting, transfer, expenditure and/or the concealment of money and assets derived from or to be used in the sale of controlled substances, including books, receipts, records, bank statements and records, business records, money drafts, money orders, wire transfer receipts, and cashier's check receipts, passbooks, bank checks, safes, records of safety deposit boxes and storage lockers that would constitute evidence of the TARGET OFFENSES.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ONE RESIDENCE UNDER RULE 41 | Case No. 22-sw-280 |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER
RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, Scott Schumacher, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of applications under Rule 41 of the Federal Rule of Criminal Procedure for warrants to search **1717 R Street NW, Apartment 313, Washington, D.C.** (the "TARGET LOCATION").

2. Based on the facts set forth in this affidavit, and per the grand jury's indictment in 22-cr-289 returned on August 30, 2022, your affiant submits that there is probable cause to believe that LOGAN CARR has committed violations of Title 21, United States Code, Sections 841(a)(1) (Unlawful Distribution and Possession With Intent to Distribute Controlled Substances), Title 18, United States Code, Section 922(g)(1) (Unlawful Possession of a Firearm and Ammunition), and Title 18, United States Code, Section 924(c) (Using, Carrying and Possessing a Firearm During and In Relation to a Drug Trafficking Offense) (the "TARGET OFFENSES") and that the TARGET LOCATION will contain evidence, fruits, and instrumentalities of the TARGET OFFENSES.

3. I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States

5

who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

4.  Your affiant, Scott Schumacher has been a duly sworn Special Agent of the Federal Bureau of Investigation since September 2017. Your affiant is currently assigned to the FBI Washington Field Office Safe Streets Task Force. During this time, your affiant has been working on federal narcotics investigations and has actively participated in several investigations which led to the arrest and conviction of narcotics distributors.

5.  Your affiant has participated in the arrest of numerous individuals for violations of federal laws to include drug and firearm related violations. I have also been involved in searches pursuant to which quantities of narcotics, illicit proceeds, firearms, documents, and electronic devices have been seized. During my career, I have received training in, among other things, arrest procedures, search and seizure techniques, interrogation techniques, and the investigation of narcotics conspiracies and other crimes. As a law enforcement officer, I have participated in the application of numerous arrest and search warrants in the investigation of narcotics and organized crime related offenses, resulting in prosecution and conviction of numerous individuals and the seizure of illegal drugs, weapons, stolen property, and other evidence of criminal activity. As such, your affiant is familiar with the methods narcotics traffickers use in this region.

6.  Your affiant has been involved in Organized Crime Drug Enforcement Task Force ("OCDETF) investigations involving drug trafficking organizations. I have extensive experience in undercover operations, working with confidential informants and collecting information from various persons with direct experience in the methods used to distribute controlled substances.

7.  Through my training and experience, I have become familiar with the methods and techniques associated with the distribution of various narcotics, including cocaine, cocaine base

(also "crack or "crack cocaine"), heroin, fentanyl (and other various opioids), methamphetamines, phencyclidine ("PCP"), marijuana, ketamine, and other drugs. Through my training and experience, I have also gained familiarity with the organization and operation of drug conspiracies, including their methods of manufacturing, concealing, transporting and distributing various narcotics including the above-noted substances. I am also familiar with the sort of support and assistance narcotics organization require to conduct their illegal activities. Through my experience, I am also aware that narcotics traffickers possess firearms to assist them in the trafficking of narcotics. Firearms are used by drug traffickers for protection and intimidation and they are maintained in secure places, such as, residences, stash houses, and vehicles. In addition, drug traffickers travel with their firearms when outside their residences.

8. Based upon your affiant's knowledge and experience, as well as the knowledge and experience of other investigators and law enforcement officers with whom your affiant has worked alongside, your affiant has learned the following:

(a) Persons who illegally possess firearms and/or engage in narcotics trafficking usually keep narcotics, narcotics related items and paraphernalia, money, firearms, and firearm-related items in their residences, and/or their vehicles, and/or stash/storage locations, such as other apartments, garages, sheds, and storage lockers.  Persons who illegally possess firearms and/or narcotics intended for distribution frequently utilize stash houses and oftentimes still have contraband or evidence of those crimes within their residences.  In addition, for individuals and drug trafficking organizations (DTO) involved in the distribution and possession with intent to distribute opioid pills, including fentanyl pills, marijuana, crack cocaine, powder cocaine, or heroin, these locations may also contain apparently innocuous materials that are used for specific purposes in the drug trade.  For example, small and large plastic baggies are the packaging material

of choice for many narcotics traffickers; scales are often used to ensure the quantities are commensurate with price, as well as to determine as accurately as possible the varying amounts of the drugs being sold; microwave ovens, pots, dishes, false bottom containers and other containers, cooking utensils, and cutting agents are often used to "cook" powder cocaine into crack cocaine, or to mix and dilute heroin and transport it discreetly thereafter.

(b)     It is also common for narcotics traffickers to store narcotics, paraphernalia, and associated items at, and/or distribute from, specific locations other than their own residences, to include stash houses, the residences of family members and associates, and other locations where trusted associates of the trafficker are allowed access in order to protect the cache of drugs, as well as the drug proceeds derived from the sale of these drugs.  Such locations provide security for the trafficker, and it is a known location where customers go to obtain drugs.

(c)     Narcotics traffickers often use and retain firearms and other weapons to protect themselves as well as to secure their cache of narcotics.  Individuals who possess and store firearms in their residences, vehicles and/or stash locations, or in the residences of trusted associates, often also store ammunition, shell casings, slugs, targets, holsters, gun cleaning kits, and ownership papers for such items.

(d)     Narcotics traffickers may also keep records of their trafficking activities to ensure they receive payment for the narcotics their customers purchase.  These records may be in written or electronic form.  Narcotics traffickers also often maintain books, records, receipts, notes, ledgers, money orders, bank records, money, safety deposit boxes and keys, numerous business cards, photographs, address and telephone number books and papers, and other documentation relating to the importation, manufacture, transportation, ordering, sale and distribution of controlled substances, and contact information for associates and co-conspirators in the narcotics

trade. This documentary evidence may include credit card and hotel receipts, plane and bus tickets and receipts, car rental receipts, accounts and records in fictitious names, false identifications, money orders, cashier's checks relating to cash transactions and records indicating the existence of storage facilities used in narcotics trafficking. These items are generally maintained and retained for long periods of time in the drug traffickers' residences, vehicles, or the residences of a relative or associate where the drug dealer can quickly and easily access them and/or in the places of operation of the drug distribution activity, such as a stash house or safe house, or in a business location with which the trafficker is associated. It also is common to maintain and store the aforementioned evidence of narcotics trafficking crimes on electronic storage devices, including computers, mobile or cellular telephones, handheld computers, digital hard drives, including but not limited to, iPads and external storage drives; and the media to store information, such as data storage devices.

(e)     Individuals involved in narcotics trafficking often conceal within their residences; the residences of family members, friends and associates; the places of operation of the drug distribution activity such as stash houses or safe houses; or in business locations with which the traffickers are associated, large amounts of currency, financial instruments, jewelry and other items of value, and or proceeds of financial transactions relating to obtaining, transferring, secreting or spending large sums of money made from engaging in narcotics trafficking within their residences, offices and businesses, garages, storage buildings, automobiles, and safety deposit boxes. Additionally, it is a common practice for drug dealers to utilize safes within their residences, or the residence of a confidante, relative, or associate, in an effort to safeguard and conceal such proceeds of their drug trafficking.

trade. This documentary evidence may include credit card and hotel receipts, plane and bus tickets and receipts, car rental receipts, accounts and records in fictitious names, false identifications, money orders, cashier's checks relating to cash transactions and records indicating the existence of storage facilities used in narcotics trafficking. These items are generally maintained and retained for long periods of time in the drug traffickers' residences, vehicles, or the residences of a relative or associate where the drug dealer can quickly and easily access them and/or in the places of operation of the drug distribution activity, such as a stash house or safe house, or in a business location with which the trafficker is associated. It also is common to maintain and store the aforementioned evidence of narcotics trafficking crimes on electronic storage devices, including computers, mobile or cellular telephones, handheld computers, digital hard drives, including but not limited to, iPads and external storage drives; and the media to store information, such as data storage devices.

(e)     Individuals involved in narcotics trafficking often conceal within their residences; the residences of family members, friends and associates; the places of operation of the drug distribution activity such as stash houses or safe houses; or in business locations with which the traffickers are associated, large amounts of currency, financial instruments, jewelry and other items of value, and or proceeds of financial transactions relating to obtaining, transferring, secreting or spending large sums of money made from engaging in narcotics trafficking within their residences, offices and businesses, garages, storage buildings, automobiles, and safety deposit boxes. Additionally, it is a common practice for drug dealers to utilize safes within their residences, or the residence of a confidante, relative, or associate, in an effort to safeguard and conceal such proceeds of their drug trafficking.

(f) It is common for individuals who deal in the possession, sale of and distribution of illegal narcotics, to secrete contraband related to the activity, such as additional drugs, any papers or records relating to the possession or acquisition of illegal narcotics and related products, at their residences, within their vehicles or the residences of friends, family or associates, in their business locations or in the places of operation of the drug distribution or illegal narcotics activity.

(g) Individuals who possess and deal in the sale and distribution of illegal narcotics commonly maintain addresses and telephone numbers, and books or papers, which reflect names, addresses and or telephone numbers for their associates and their illegal organization. These individuals often utilize cellular telephones, pagers, and telephone systems to maintain contact with their associates in their illegal businesses. These telephone records, bills, and pager numbers are often found in their place of residence or in the residences of their friends, family or associates, in their business locations, or in their places of drug distribution, such as a stash house or safe house.

(h) Individuals who deal in illegal narcotics often take photographs of themselves, their associates, their property and illegal contraband. These photos are usually maintained in their residence or vehicles or in the residences of their friends, family or associates, in their business locations, or in the places of operation of their drug distribution activity, such as a stash house or safe house.

(i) Persons who traffic in illegal narcotics often maintain documents, letters and records relating to the illegal activity for long periods of time. This documentary evidence is usually secreted in their vehicles, residences, or the residences of their friends, family or associates, in their businesses, or in the place of operation of their drug distribution activity, such as a stash house or safe house. This documentary evidence includes but is not limited to telephone numbers,

telephone books, address books, credit card and hotel receipts, accounts and records in fictitious names, false identification, money orders, cashier's checks relating to cash transactions and records indication the existence of facilities used in narcotics trafficking.

(j) Furthermore, your affiant knows that drug dealers utilize electronic equipment such as cellular telephones, computers, and other electronic devices to further facilitate their illicit transactions.

(k) Based on my training and experience, I know that individuals involved in criminal activities will often communicate with their associates before, during, or after the crime by using cellular telephones and that communication can be made through either verbal conversation, third party communication applications, or through the use of text messages between the two communicating parties' cellular telephones or other devices. I also know that to facilitate drug trafficking, narcotics will be kept and stored in a discreet location. I have also learned that narcotic dealers will sometimes direct their customers to use mobile payment service platforms in lieu of currency. These platforms include Cash App, Venmo, or Zelle.

9. The information set forth in this affidavit is based on my personal observations and investigations, my experience and background as a Special Agent with the FBI, and information provided directly or indirectly by other law enforcement officers. Unless otherwise noted, whenever this affidavit asserts that a statement was made, it was an instance in which the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement). They may not always set forth my personal observations, but rather, may represent information provided by other law enforcement officers who conducted such investigation.

**PROBABLE CAUSE**

10. On or about July 6, 2021, Metropolitan Police Department (MPD) officers received a tip via the anonymous tip line regarding individuals selling marijuana in the 1400 block of R Street NW, Washington, D.C. When MPD arrived at the location, officers observed CARR shove an object in his pants. When CARR attempted to flee, MPD detained CARR and felt a hard object inside the waistband of his pants. In the course of a protective pat down, MPD officers recovered a firearm from CARR's waistband. During a search incident to arrest, MPD officers recovered additional evidence on CARR's person, including two plastic bags containing a green leafy substance, one scale, 11 small clear empty plastic bags, and $554 in U.S. currency. On July 7, 2021, Logan CARR was charged in the Superior Court of the District of Columbia in case 2021-CF2-3768, and the government's request for detention was denied.

11. On September 29, 2021, a Superior Court of the District of Columbia Search Warrant was served at 1717 R Street NW, Apartment 313, Washington, D.C., the known residence of CARR, by members of the MPD. At the time of the search warrant, Logan CARR and Antoin WHITEHEAD were present. During the execution of the search warrant, CARR made statements numerous times indicating that it was his apartment. MPD recovered three firearms, approximately 8.5 grams of a white rock like substance that tested positive for cocaine base, or crack cocaine, fifteen ounces of a green leafy substance that tested positive for THC, two digital scales, one of which was in CARR's pocket, and U.S. Currency exceeding $1,000.

12. On September 30, 2021, a DNA Buccal Warrant for CARR was obtained and executed. DNA swabs from one of the firearms recovered, a Glock 43 9mm handgun, and DNA obtained pursuant to the warrant referenced above were compared by the FBI Laboratory. It was

determined that there was very strong support for concluding that CARR's DNA was present on the Glock 43 recovered from 1717 R Street NW.

13. On June 9, 2022, in the Superior Court case 2021-CF2-3768, the government filed a five-count indictment against CARR charging CARR with possession with intent to distribute while armed, possession of a firearm during a crime of violence, carrying a pistol without a license, possession of an unregistered firearm, and unlawful possession of ammunition. Logan CARR was arraigned on this indictment on July 25, 2022.

14. On August 30, 2022, CARR was indicted by a Grand Jury for District Court in the District of Columbia in case number 22-cr-289 in connection with the search on September 29, 2021. for unlawful possession with intent to distribute cocaine base (21 U.S.C. § 841(a)(1) and (b)(1)(C)), unlawful possession with intent to distribute marijuana (21 U.S.C. § 841(a)(1) and (b)(1)(D)), and using, carrying, and possessing a firearm during and in relation to a drug trafficking offense (18 U.S.C. § 924(c)(1)(A)(ii)). CARR thus has two pending cases in which he has been indicted on narcotics and firearms charges, a federal case (22-cr-289) and a Superior Court case (2021-CF2-3768).

15. On September 1, 2022, at approximately 6:00 am, FBI Special Agents of the Washington Field Office executed the arrest warrant for CARR issued in 22-cr-289. Agents knocked and announced on the door of 1717 R Street NW, Apartment 313, Washington D.C., the known residence of CARR, in order to serve a United States District Court for the District of Columbia Arrest Warrant issued for CARR by District of Columbia U.S. Magistrate Judge Zia Faruqui on August 30, 2022. After waiting a reasonable amount of time, the door was breached, and CARR was seen in the studio apartment living area/bedroom. CARR followed commands and came to the door where he was handcuffed. CARR was clothed only in a tank top and boxer shorts

and requested that agents obtain pants, shoes, and a sweatshirt from his apartment. To do so, Special Agents entered and conducted a protective sweep of the apartment in order to find the requested clothing items.

16. Once conducting a protective sweep, agents saw, in plain view, numerous items consistent with narcotics trafficking. On a table in the living area of the apartment, agents saw a small digital scale, often used for weighing out small quantities of narcotics for sales; a small rectangular purple plate with the words "SpaceChef" on it and a razor blade, often used for cutting or separating larger quantities of narcotics into smaller quantities for resale; a large box of sandwich-sized plastic zip bags, often used for packaging narcotics for resale, and a Pepsi bottle that was split into two with a false bottom, when the two pieces are combined appears to be a full bottle of Pepsi, and is often used for concealing contraband to include narcotics. In a black shopping bag near a shelf holding CARR's clothing there was a large clear bag, knotted at the top, containing a green leafy substance consistent with the appearance of marijuana. On a chair next to the bed there was a clear plastic bag containing approximately 10 small zips of a white rock like substance consistent with the appearance of crack cocaine. On the bed there were two phones, one smartphone and one flip phone; based on my training and experience, narcotics distributors often have two or more phones, one of which is often a flip phone or "burner" that is used to arrange narcotics sales.

17. Based on the indicia of criminal activity in plain view, I have probable cause to believe that CARR has not ceased his engagement in the TARGET OFFENSES and additional evidence, fruits, and instrumentalities of the TARGET OFFENSES will be uncovered at the TARGET LOCATION.

## CONCLUSION

18. Based on the foregoing, I submit that there is probable cause to suspect that the TARGET LOCATION will contain evidence, fruits, and instrumentalities of the TARGET OFFENSES. I thus request that the Court issue the proposed search warrants pursuant to Federal Rule of Criminal Procedure 41.

19. Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Respectfully submitted,

_____
Scott Schumacher
Special Agent
Federal Bureau of Investigation

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on September 1, 2022.

_____
HONORABLE ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE